UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

MARK and ELIZABETH LEVY,  No. 05-12127

                      Debtor(s).
_____/

JEFFRY G. LOCKE, Trustee,

                      Plaintiff(s),

     v.  A.P. No. 07-1014

OLD CROCKER INN ROAD, LLC, et al.,

                      Defendant(s).
_____/

Memorandum After Trial
_____

      In the late 1980's, debtors Mark and Elizabeth Levy became "names" of Lloyds of London. At about the same time, they established the Elizabeth M. Levy Trust with an initial contribution of $10,000.00. It was further funded by an inheritance from Elizabeth Levy's father in 1987. Although the debtors deny it, the court has no trouble inferring from all of the facts and circumstances, including both the timing and the offshore location, that the trust was established to shield assets from potential creditors in general and Lloyds in particular.

1

By the end of the decade, the Levys realized that their relationship with Lloyds was going to be a disaster. They moved the trust to the Isle of Man in 1990.

The nominal beneficiaries of the trust are Elizabeth Levy and the Levys' two children, each with an undivided one-third interest. While the trust purports to be irrevokable and purports to have an independent trustee, the Levys clearly have always had actual control of the assets of the trust.

In 2002, the Levys found a property in Cloverdale, California, which they decided would be a good property on which to build their retirement home. By this time, the Levys had been in litigation with Lloyds for over a decade and knew they had a huge liability to it. Accordingly, they decided to purchase the property using the trust's assets.

The Levys made the $8,500.00 earnest money deposit using their own funds. They then formed defendant Old Crocker Inn Road, LLC, to take title to the property. The sole manager of the LLC is defendant Richard Bernstein, a close personal friend of Mark Levy. The LLC is owned 95% by the Elizabeth M. Levy Trust and 5% by one of the Levys' children. Of the total purchase price of $395,000.00, $195,617.32 in cash came from the Trust, $197,500.00 was in the form of a note made by the Levys, and the balance was the earnest money deposited by the Levys. The Levys have always treated the property as theirs, and have made several of the note payments from their own funds.

Lloyds obtained a final judgment against the Levys in 2004. The Levys filed their Chapter 7 bankruptcy petition on August 17, 2005. By this adversary proceeding, the Chapter 7 trustee, plaintiff Jeffry Locke, seeks avoidance of the transfer of funds from the trust to the LLC as a fraudulent transfer, a declaration that the bankruptcy estate has equitable ownership of the property, and a judgment that the LLC be wound up and liquidated.

Under California law, trust assets are not shielded from creditors if the debtor is a beneficiary of the trust and exercises excessive control over the assets of the trust or was the settlor of the trust. Cal. Probate Code § 15304; *In re Moses*, 167 F.3d 470, 473 (9th Cir. 1999); *In re Atwood*, 259 B.R. 158, 162 (9th

Cir. BAP 2001).[1] Accordingly, Elizabeth Levy's interest in the trust was property of the estate and her transfer to defendants for no consideration was a fraudulent transfer avoidable under § 544(b)(1) of the Bankruptcy Code.[2]

Had the Levys not used the trust property for their retirement home, the bankruptcy trustee would have a much more difficult time recovering the trust assets for the bankruptcy estate. He would have either had to litigate in the Isle of Man or, more likely, sought repatriation by proceedings against the Levys. See *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999). Having obligingly repatriated almost all of the trust assets by purchasing real property in California, the Levys have provided a remedy for their creditors which does not involve offshore litigation.

Elizabeth Levy's share of the trust in the Isle of Man was property of her estate because she exercised excessive control over the trust and it was self-settled. Her transfer to defendants was accordingly avoidable as fraudulent, both because it was intended hinder Lloyds and because reasonably equivalent value was not given.

Locke argues that he is entitled to the entire equity in the property of the defendant LLC, but the court does not follow his logic. While Elizabeth Levy did not have the power to lawfully shield her own assets from creditors by establishing her trust, she did have the power to divest assets to her children and did not need to create the trust offshore in order to do so. It appears uncontested that Elizabeth had only a 33% percent interest in the trust, having given the other two-thirds to her children. If that transfer was assailable, Locke has not shown it. Accordingly, it appears that Locke is only entitled to avoid the transfer to the extent of Elizabeth's interest, or $65,205.77.

---

[1] Despite lack of any standing the court can see, defendants seek to drag the court into a choice-of-laws debate. Since the Levys are residents of California and the real property is in California, the court has no difficulty applying California law.

[2] When the bankruptcy was filed, Lloyds had the right to avoid the transfer as fraudulent pursuant to California Civil Code § 3439 et seq., as the transfer had been made within four years as required by Civ. Code § 3439.09. Pursuant to § 544(b)(1), the bankruptcy trustee has the same right.

3

Nor does it appear necessary to wind up the affairs of the defendant LLC, although the court will leave the door open for Locke to seek this remedy if it is necessary.  The court will issue a money judgment against the LLC and declare that until it is satisfied it shall constitute a lien against the subject property.  The LLC may thereafter satisfy the judgment or Locke can collect it through normal procedures.

For the foregoing reasons, Locke shall have judgment against the defendant LLC in the amount of $65,205.77, together with interest at the federal legal rate from and after June 3, 2003.  Until satisfied, the judgment shall be a lien against the Cloverdale property.  Locke may seek other and further relief upon a proper showing of necessity to avoid injustice.  Locke shall recover his costs of suit.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052.  Counsel for Locke shall submit an appropriate form of judgment forthwith.

Dated: December 19, 2007

Alan Jaroslovsky
U.S. Bankruptcy Judge